2017-1304 In Re Power Integration. Mr. Pollack, please proceed. Thank you, Your Honor. Good morning. May it please the Court. This Court gave the Board two directives on remand in this case. The Board failed to follow both of those directives, and its decision must be set aside. This Court first instructed the Board to fully consider the District Court's construction, which was Power Integration's proposed construction in the re-exam. The Board did not do so. This Court said in the Power Integrations v. Leakey's case 797-Fed-3rd There were two issues on the last remand order, which were intertwined. The first issue is that the Board failed to appreciate what the patentee's actual arguments were, including that it doesn't have to be directly connected in order to be coupled, and the patentee had made that argument repeatedly, but the Board failed to appreciate that argument and instead rejected, purported to address the patentee's arguments, but hadn't, and rejected them. Intertwined with that was the patentee had received two favorable District Court claim constructions along the lines of what he was arguing, right? That's correct. Is it fair to say the Board has now clearly addressed what the patentee's precise arguments were in, namely, doesn't have to be directly connected to each other in order to be coupled? I mean, doesn't have to recognize that a direct connection is not required by the patentee to be coupled? I don't think so, actually. That issue was the question that this Court said one of the key issues was whether or not the counter could control the DAC through some other component, and this was the issue that this Court called the critical issue, whether in light of the specification and the surrounding claim language requires the counter itself and not the counter and a memory functioning together to drive the digital analog converter. And this Court concluded because the Board's opinion provides us with an inadequate predicate upon which to evaluate its decision to reject claim one, the Court vacated and remanded. On that exact issue, the Board actually quoted that portion of the Court's remand instruction and said, quote, this issue was addressed in detail in the decision, meaning their prior decision. And then it just simply repeated verbatim, quoted, block quoted what it had already said on that question and didn't add anything new at all to the analysis. Did not address this Court's questions during the oral argument, didn't address the issue of whether or not some intervening components would be within the proposed construction and some would not. What page of the Board's new decision, most recent decision are you referring to? So this is in the appendix at page 10, where the Board has a heading, does claim one preclude the counter and memory functioning together? And that is, and they quote from the Federal Circuit prior opinion right below that heading. And the very first sentence after the quote reads, this issue was addressed in detail in the decision. And then it just block quotes from the prior decisions thereafter. The only thing additional that the Board raised was they tried to point to this Court's decision in the litigation, the Power Integrations Fairchild 1 litigation, and suggest that this Court agreed with the Board's interpretation. Well, we know, of course, that that's not correct. You just read that decision, it makes no finding that supports the Board's decision. And in fact, in the second decision, at 843 Fed Third 1329, this Court finds exactly the opposite, that the construction, and in fact, that as a matter of fact, that the prior art having a ROM in between decouples the counter from the DAC. And to your question, Judge Moore, the issue of whether the patent office grappled with this question of intervening components, which is one of the issues that you addressed that was sort of intertwined here, that was a specific ruling of the District Court and addressed in the District Court's analysis, which was, I believe, in part what the Court was getting at trying to get the patent office to fully consider what the District Court had done in the parallel litigation. Regardless of the standards applicable, and I mean preponderance versus BRI or whatever, you would think that if two other adjudicators have reached the opposite conclusion of view, that any good judge would want to consider those regardless of what the standard is. Now, the answer might be, my standard is not the same as your standard, and as a result, while I see you reached this conclusion, my conclusion is different because, and they didn't do that, but certainly, I did not interpret our original remand order, and I'm curious if you did, to require the Board to apply the standard that the District Court adopted because they seemed to suggest that we somehow were ordering them to apply the District Court standard, which they say would be, I don't know if that's true. Unwarranted, I believe, was the... Yeah, I think that sounds about right. And Your Honor, I don't know exactly how the Board was interpreting this remand order. I thought it was pretty clear. Angrily, I think is fair to say. I thought it was relatively clear that what this Court was suggesting was, please go back and look at what the District Court actually did. Look at its analysis. Look at what evidence it considered. In this case, it considered solely the intrinsic evidence and determined whether, based on the Court's analysis, its result was consistent with the broadest reasonable interpretation standard. The Office did not do that. In fact, in the remand decision, they don't cite to or quote at all the District Court's claim construction. Based on what we see, we don't know whether or not the Board actually even read the District Court's analysis. Now, the Director quotes it in the red brief, but the Board did not. The Board basically said, one, we think such an analysis is unwarranted. Two, they said, we don't know how we would do such an analysis. And then third, they said, well, putting all that aside, the District Court's construction is narrower, so fait accompli, it must not be the broadest reasonable interpretation, which we think begs the question. The question, of course the District Court's construction was narrower. However, the question was whether the Board's construction was unreasonably broad. I don't know if we have cases that say this, but it seems to me, to be honest with you, that the space between the construction, the broadest reasonable construction, is probably a pretty narrow little window or band. And so certainly, it can't possibly be the case that every appropriate construction found as a matter of law, that there exists broader constructions which are reasonable, right? Sometimes there may, and sometimes there may not. So why is this construction unreasonable? Tell me what's unreasonable about it. Step aside now from the failure to entertain our vacate and remand order as though it was optional and instead go to, why is this an unreasonable construction? Because we do have a much more detailed opinion on this now than we did before. Well, I actually think that the opinion repeats a lot of what it said previously. But the reason that- Clearly, they make that clear to us. We have always said and will always say. We do, do, do, do, yeah, I mean, it's a, at a minimum, bizarrely written opinion. The reason it's unduly broad is the Board's construction is simply joined together in the same circuit. And they reach that construction by grabbing a Webster's Dictionary and finding the definition of couple. Is there any reason to think the memory in the prior art substantially changes the voltage or current, whatever it is that's passing between the converter and what are we sending it to? What are the two elements? The counter and the digital to analog converter. Yeah, the D-to-A converter. Yes. So, is there a reason to think that the memory in the reference, the prior art reference, is impacting in a significant manner the signal that transfer goes from one to the other? Yes, in fact, there is. And it's because the whole purpose of having a memory is to be able to generate control signals that don't look anything like the address that you go to the memory to get that data from. Otherwise, you wouldn't need a memory in the circuit. The point of the prior art memory was to provide randomized variation. And so, the output signal actually bears no resemblance in a control way. And in fact, it's not the same voltage or the same current. I mean, sorry, the memory generates at its output a completely new set of digital signals that are different from the signals that come into its input. And in fact, it was described by one of the experts as... Can I turn you, just for a minute, which I think this is along the lines of what you're saying right now, which to give a little bit more pointedness to it. Claim one says that the counter causes the digital analog converter to adjust the control input and to vary the switching frequency. So, I think what I'm hearing you say, if I understand it in the context of claim one, is that if you have the memory between the counter and the ADD converter or the D to A converter, then that claim limitation is not met. Is that what I hear you saying? Yes, that's correct. Can you elaborate on that a little bit? In that circumstance, the data coming from the counter, the control coming from the counter, does not cause the frequency to change. What causes the frequency to change is the data stored in the ROM that is then output to the D to A. And that data is randomized. It causes the frequency to hop around in a pseudo-random manner. And that was important to the prior art. And so, in that instance, it's the memory, the data stored in the memory, that's causing the frequency to change, not the counter. Is your argument then that the language coupled to the counter should be interpreted in light of that surrounding language to provide something more consistent with what the district court said the interpretation was? Exactly. And that was the analysis the district court went through. The district court said that there's surrounding language in the claim itself that suggests that a coupling, as recited in the claim, requires something more than simply that they're joined together. It requires coupling for the purposes of control. And there's also other coupling where the D to A converter is coupled to the control input of the oscillator. And so, the court, the district court found in the claim language itself this idea that the coupling in this claim is for the purposes of control. And then it went to the specification and it found consistently in the specification that it taught that the counter is what was causing the frequency variation. It said repeatedly that the counter causes the DAC. The counter drives the digital analog converter. Let me back up for a minute and say, now, why isn't that taking the coupled language and trying to read specific embodiments in the specification into the coupled language? It's because, and it's not a specific embodiment, the limitation doesn't require any specific form of the signal pass. And that's why the district court said it's coupled if voltage, current, or control signals pass from one to the other. And so, there's a number of different embodiments and that construction actually goes beyond that and will encompass other kinds of connection than is disclosed. And that's why the district court went on and said, we don't mean to say that this requires a direct connection, but in fact, intervening components are okay so long as they don't break the control relationship. I realize I've gone way into my rebuttal. Yeah, we'll save some rebuttal time for you, Mr. Pollack. Let's hear from Ms. Nelson. May it please the court. I know this court is not too, too happy with what the board did here, but if I could, I just want to take one step back and try to explain why we're in this extremely awkward position in this very unusual case. I think there was a series of five events that sort of led us into this very odd procedural position. The first is that the original examiner did not do a very rigorous examination and issued the claims after a single office action. In fact, never, ever rejected claim one. The second is that Fairchild did not request reexamination until after there had been a jury verdict on infringement. And therefore, the reexamination has always lagged behind the district court action. The third is that power integrations then, when there was a board decision, went on this detour to the district court in a 145 action. And it wasn't until Telus that we ended up coming back and being transferred to this court. And then the fourth is that the district court, when it actually did construe, we find, and we can look to the district court's decision, has a single sentence and did not at all any kind of thorough construction. And Fairchild never challenged its construction. And then, as a consequence, this court has, in the meantime, actually come to two different, issued two opinions based on that unchallenged construction. And finally, when this court sent the board's decision back because it had misapprehended power integrations argument, POSA was pending at the Supreme Court. And at that point, we didn't, BRI was up in the air. And so now here we are, and we have these two issued decisions. But nothing about our vacating remand order was somehow contingent on BRI, right? We didn't say, well, BRI might not be the standard. And that's why we're vacating and remanding. No, that's true. Nothing like that happened. I mean, I don't think that. No, that's true. But I just, that is. I'm not questioning BRI at all. No, I think that's true. But that did affect how quickly the board acted on it because it was waiting to find out whether BRI was even still in play. But now, with respect. But if the question that was asked was whether the interpretation that the board reached was consistent with the broadest reasonable construction of the term. Right. How in that, in any way, does that suggest that the broadest reasonable construction was not going to be the standard that was applied on remand? It was only saying, is the construction consistent with BRI? Suggesting that is the very standard that should be applied. That is true. It's just, however, if COSA had come out in a different way, it could have affected what the board did, independent of what this court ordered. But let me just get to what I think the board was struggling with and why it responded the way it did. I think that it felt that it was in a very awkward position here because, as I said, if you look to the district court's decision, there's a single sentence where it basically says that we find, based on the specification, that this is the correct construction. And it cites only to the claim, the two instances where the term appears in the claim. And I think, reasonably, the board felt very in an awkward position to try to second guess what the district court, why it had gotten to that construction, without somehow casting a dispersion on the construction or suggesting that it was trying to- I feel like you are really projecting a lot of analysis into what possibly motivated the district court to tell us that our remand order was unwarranted and they weren't going to comply with it. But I don't see any of what you're saying in the board opinion. If they had just said that, if they had said the district court's opinion was based on a single sentence of analysis, and we disagree with it at least under the BRI standard, I don't understand why they couldn't have just done that. If what you're saying is true, it would have been a much friendlier little opinion than the one we got. I think that's true. And, admittedly, the board used some language, some words that were regrettable. But I think that, effectively, it felt that if it said anything at all- Is it like somebody that, like, reads these things before they let them go out the door written like this? Like, you know, somebody catches- When you've got some crazy language that basically goes like this to the appellate court, we're not going to let that one issue? I just think the board felt that no matter what it said about the district court, that it didn't want to be in a position where it was trying to evaluate another tribunal's findings. But now, if I could, turn to the merits, because I think what the board did here was completely appropriate and consistent with what the PTO does every day. It's been charged with trying to assess whether or not the original prosecution arrived, or patentability determination was correct. And it's supposed to correct its mistakes. And it did that by applying the broadest reasonable construction. And here, what we have is a very- One of the problems I'm having with what you're saying right now, and just for the record, one of the problems I'm having is that it's not like every other case. It's a case where this court struggled with understanding the board's decision, and so then remanded it to ask for the board to consider something very specific. So I don't think it's quite like every other case. But please continue with what you're going to say. And I think you're going to try and explain why it is that the board's construction was the correct one. Well, I was going to explain that. And I think that it did ultimately determine that it was the reasonable construction. And therefore, because the district court's construction was narrower, it was not the broadest reasonable. But the reason it got to where it was, and this is unusual in the sense that we have a term that is not in the claim, that is not defined in the specification, it does not ever even appear anywhere in the specification. What about the specific argument that the surrounding claim language that talks about the relationship between the DDA converter and the counter, that that makes it so the interpretation, the board's broad interpretation was unreasonable? There is additional claim language. The board gave way to that language, but that doesn't... What's your answer to the question? Why doesn't that additional claim language make it so the board's construction is incorrect? It doesn't make it incorrect, because just because there's this other limitation in the claim doesn't in any way limit how the term coupled is interpreted. In other words, coupled could have a variety of meanings, even if that functional terminology is met. And in fact, in the specification, yes, we have example one, where there is actually a direct connection between the counter and the DDA converter. But they're looking for something more than that, but not too much more than that. I mean, that's just the whole problem here, is they're pulling this definition out of thin air. It's not required or mandated by the specification. And then they're trying to use it as the subsequent panel of the board recognized to distinguish between certain intervening components, but not others. So I think they've said, like, inverters or scaling circuits would be okay, but memory is not. And when you look to the specification, a fair reading of the specification, there's simply nothing there that draws a line between certain intervening components and not others. What we have is a single example where they have a direct connection between the counter and the DDA converter. And then we have some broad language which talks about we can vary the connection to the devices or circuit elements in any way we choose and still be within the invention. They're trying to put another backstop in there, which is simply not present in the specification. And that's the problem we have. What about the argument, what's your response to the argument about how the claim says it's a circuit comprising and so the coupling language or the coupling interpretation that the board arrived at, which was that all of these components must be in the same circuit, is it renders the language superfluous? Well, the reason the board got to the extrinsic evidence is, of course, because there was nothing in the intrinsic evidence whatsoever that led it to that conclusion. That's in the claim language. I'm talking about the claim language. The comprising is in there, but comprising doesn't mandate that it arrive at the construction that power integration is suggested. But it got to the extrinsic evidence and it found this definition, and I don't think that there's anything inconsistent with the definition it has in the use of comprising. This is basic claim drafting, like in any kind of, whether it be an apparatus or a composition or electronic devices we have here. You set out the claim, you have comprising. Can I ask my question again, because I'm not sure you answered it. Maybe you did, but I want to make sure you understand my question. The claim language that's being interpreted is coupling, right? One of the arguments that I understand that's being made is that you can't interpret coupling to just be that all of these different elements in the claim are in the same circuit, because that would be superfluous to other language that's already in the claim that says a circuit comprising elements A, B, and C. In other words, it's all those things in a circuit. I was getting to that, and the point is that the board's definition is joining. They're joined together, which means these two things have to be joined together, the counter and the DDA converter. What I was trying to say is, this is standard claim construction, claim drafting, where you have whatever it is comprising in a series of things, one, two, three, four, and five, and then you set out how they're arranged or organized. If it's a mechanical device, it could be one is connected to two, and that means that three, four, and five are not between one and two. Similarly here, where we're saying that they're joined together, the counter is connected, joined in this case, to the DDA converter. It means other things are not, claimed elements are not between them. That's just standard claim drafting. I think there's nothing wrong with that construction, and it fits completely with the typical claim drafting that occurs in claims. I guess I'm confused. What exactly is the board's construction, so I know what it is? Is it joined into a single electrical circuit? What is it? Yeah, joined together in a single, so they're within a single electric circuit, and they're joined together. It means the two elements are joined together. Super question, where precisely did they articulate their construction in the decision, just so I know the exact words? It's appendix... Okay, appendix seven. The term couple, and this is, again, this is a dictionary definition, but it's the electronic definition in an unabridged dictionary. And it says it means to join, parenthetically, electric circuits or devices into a single electric circuit. So it's to join the circuits or devices, in this case. Is that their definition, or is that Webster's? That's Webster's. Okay. I quote from it. All right, did they say they adopt this? Yes. Where? They say having no substantial guidance just above there, from either the context of the claim itself or the specification, we then turn to the extrinsic evidence. And then they recite this definition, which they say is consistent with what's in the specification. And we think that it means nothing more than that. And joined into a single electric circuit is their view. Joined into a single electric circuit. Right. So does that mean that, according to their view, electric circuits can be quite large? There can be parallel lines and series lines. You understand, right, Christoffel, what I'm talking about? If there just happened to be a digital to analog converter and a control input, or a digital analog converter and a counter in a giant electrical circuit with parallel lines, one was on one parallel, one was on the other. No feedback. So no signal from one is passing to the other. In fact, the signal comes in, parallel comes out, is joined together and goes on. That would meet the board's definition, wouldn't it not? I don't think it would. I think what they say in series, a single electrical circuit can have parallel lines in it. Parallel lines for sure. There are lots of parallel lines within electrical circuits. They don't say it has to be connected in series. Do you read that in there? No, I don't read that in there. But I do think that it's suggesting that they are joined, that they're somehow joined, just like a mechanical device. No, it says joined into a single electrical circuit. So do you think the word joined, so ah, so now are you saying the word joined actually implies a control relationship? I think that it means that, no, I think it means that they are joined, whether directly or indirectly. Circuits can be really big and have lots of components. Is every component within the circuit joined together? I can't say that. I don't think that. A single circuit, lots of components. You see my problem with whether or not the construction is reasonable, because they didn't choose in series, in parallel. They suggested, and it's absolutely possible in an electrical circuit to have no feedback from one voltage or current to another. Two things can be present in the same electrical circuit and thereby joined into a single circuit, but have no control relationship. And if the board meant there was a control relationship by joined, well, now I'm really confused because that seems to be what they're running away from and what the district court held and what they sort of refuse to think about. So my point of struggle with the reasonableness of this interpretation is, I'm not positive exactly what the board is intending to cover, but it seems like it would, the breadth of their construction would absolutely cover a circuit which has two components that have absolutely no impact on each other within the voltage or current transmission process. The problem is, what we have here is a very broad claim. And this is evidence, this is a dictionary definition, and this is what they had to go to because they could find nothing in the intrinsic evidence that at least gave them the construction that power integrations has asserted. Do you think this is the only definition of coupled that exists in the extrinsic evidence? Well, and that's what's going to be my next point is that power integrations has not brought forth another dictionary definition or a dictionary definition that suggests that the definition or that the construction that they are advocating for is the ordinary. I'm not sure if this is where Joe Stoll is going, but you know, we actually, you didn't give us the Webster's Dictionary that they relied on, so I had to order it from the library because we actually don't apparently keep a handy 1993 Webster's Dictionary around. Do you know that the definition in the sentence directly above the joint electrical circuit sentence says to bring systems into such relation that performance of one influences the performance of the other. Then it says to bring two electrical circuits into such close proximity as to present mutual influence. Then it says, and by the way, the definition the board relied on a definition three in the list of the three. Two and one both include, in the same piece of extrinsic evidence, both include influence. It has to be a control relationship between the components for them to be coupled. Even in the electrical one, the very electrical one the board relied on, they left out the mutual influence portion of the definition. I don't know. Maybe that's outside the record. You cited the dictionary and told me where to look at it, so I'm not sure if, even though it's within the same number definition, tell me if you think that's technically outside of the record, such that as an appellate court, I shouldn't be looking at that piece of extrinsic evidence. Well, I think the other definitions are probably outside the record, but I think those were not directed to the electronics art, and this one was, and that's why it shows it. But I've also looked at other dictionaries. No, no, it says, no, no. It says to bring two electrical circuits into such close proximity as to promote mutual influence. To join electrical circuits or devices into a single circuit. That's the same definition. Those aren't two different ones. They're numbered the same in the Webster's dictionary. That's all I'm saying. It's the same definition. It's not two different ones. I don't think. Anyway, well, actually, it's number two and three under the electrical part. So maybe they are different. I don't know. I don't want to go outside my roles in appellate court and say I'm bringing in new extrinsic evidence, but you didn't give me the definition. You have Webster's. There's some dot, dot, dots in the portion you quoted, the board quoted. So I went to look at what's in between the dot, dot, dots. And that's what I found is this mutual influence stuff. So, I mean, I don't know. That's why I'm pretty sure. What does the board mean by joined? Even the mutual influence. I mean, if we go further in the claim, I think we actually have something about it having to have a control relationship. And the board found that that was met in Martin. And we can look to Martin, but Martin has some pretty strong language that indicates that it's actually the count in Martin. It's the counter that is making the calls. It's the one that's sending the address. You can have mutual influence even if the signal is affected, right? Like, you don't have to have the same voltage current or signal passing from one to the other. You can have stuff in between and that still there is still can be a mutual influence on the ultimate signal despite the presence of the memory in between. No, I'm not. I'm not discounting that as a possibility. I think that's what you're saying, right? That's exactly what I'm saying. What I think that the prior art does and I think the prior art effectively what the memory does, the memory stores random numbers. That's all it does. It has a lookup table and it's the address from the counter that goes to the memory and tells it which number to spit out. You've read this whole record. Do you think this is a case where the district court got the construction wrong or this is one of the narrow, small number of cases where there just might be some room between what the actual construction is and what the broadest reasonable construction is? Well, I do think that the district court didn't really grapple with it because I don't see the district court. I mean, the district court understandably had a lot of claims. It was claim limitations. It was construing. This was one of them. It didn't spend a lot of time on it and I don't see it really digging in and going to the specification and trying to figure out what that term means. I think if it had, it would recognize at least that that term doesn't even appear in the specification and much less defined in the specification. But if it is a reasonable construction, which I'm not sure it is, then this I think for sure is a case where there is a, there's some air between the two. Did you look at the arguments that were being made before the district court? I mean, a lot of times these cases you have to understand the underlying arguments being made by the differing parties with different proposed constructions and then look at the district court's construction and helps you to understand it. I just, I'm trying to understand how informed what your answer was. Well, I did look at the, then again, those were I think a single page on either side in terms of the arguments made by both sides and the arguments were similar to what's been made before this court but much abbreviated and the court simply didn't really, I don't think the court really grappled with it. Okay, thank you so much, Ms. Nelson. Mr. Pollack, you have a little bit of rebuttal time. Just a couple of comments and I think pragmatically, the criticisms of the district court, one, we don't know whether or not the board had those same criticisms or felt at all what counsel just described because the board didn't say anything but if the district court's activity in doing the claim construction was unreasonable, wouldn't one have expected Fairchild to have appealed that construction when it would have a de novo review before this court? It chose not to. Yeah, but that just means that construction was reasonable but maybe this one is too. Get two reasonable constructions. Now, pick the broadest one. Okay, I just wanted to address this issue that the district court's construction was unreasonable because it had been applied by this court and it's been applied twice by this court, which I think is something that... I did not understand Ms. Nelson to say the district court's construction was unreasonable. I noticed her dancing cleverly and carefully around such a statement but I definitely did not find, I didn't interpret her to say it was unreasonable. Why the board's construction is unreasonable is the same source material here. The district court, in fact, reviewed the intrinsic evidence. That's not the point, Mr. Pollack. You're missing it. You've got to convince us this construction's unreasonable. It's unreasonable because it ignores the intrinsic evidence. It says that there's no definition in the spec and so we can just go and get a dictionary definition. Because the word couple doesn't exist in the spec. It is in the claim. Those claims were the original claims. It's part of the original specification. The specification discloses the relationship between the components, which is recited as coupled to in the claim. The specification and the claim language emphasizes repeatedly the control relationship. The board's construction is so broad as to eliminate any relationship between the two components other than that they are located in the same circuit. Well, that is the point that I was struggling with in my conversation with Ms. Nelson is what do they mean by joined into a single electrical circuit? And do you agree it's possible to have a single electrical circuit that's very large where two things would have absolutely no control relationship whatsoever? That's a different question from whether or not sticking a memory in between two things obstructs the control relationship because it may not be that everything that passes from one has to pass identically into number two. No. You can still have a control relationship. You can still insert influence over a signal even if it is altered along the route. But in the prior art, and I really don't think there's disagreement, that if it is required that there be control signals passed from the counter to the DAC, that the ROM prevents that from happening. That the counter does not control in that situation the change in frequency. But we wouldn't be able to decide that, right? If we agree with you on the construction, would we have to send that part back to the board? No, I don't believe that the office disagrees that under the construction that we advocated that the prior art does not disclose. I understand you say that, but is there something I could rely on, for example, in a board decision, either the first one or the second one, to say if their construction is the correct one, then this piece of prior art doesn't do that, because it's a fact finding and I can't sort of infer it or surmise it. The examiner's findings, which we cite in our papers, explicitly said that the ROM decouples the counter from the DAC, and then went on and said, they're only coupled through the memory. And so, and it was never challenged by anyone. That's using the claim language itself. And so, we don't know exactly how the examiner was interpreting coupled when he or she made that statement, right? Well, the examiner, the examiner, we can infer because the examiner was coupled and then he said that it would only be connected if it was coupled, if you consider it coupled through the memory. So, he modified coupled when he talked about what the prior art showed. I don't believe there's any dispute of fact on what the prior art shows that would require a remand, but at the very least, this court can rule on what the proper claim construction is and vacate and- What we really mean is we can rule on what the broadest reasonable claim construction is. Under the broadest reasonable construction standard. Okay, thank you, Mr. Pollack. I thank both counsel. Another excellent argument by both of you and it was very helpful to the court.